IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BILLY BURTON, JR.,<br><br>    Plaintiff,<br><br>  v.<br><br>CORPORAL SIMEON CROCKER, in his individual capacity, PATROLMAN SEAN CANNON, in his individual capacity, CORPORAL BRANDON PAYNE, in his individual capacity, CITY OF WILMINGTON, DELAWARE, a Delaware municipal corporation,<br><br>    Defendants. | C.A. No. 25-454-JLH-LDH<br><br>FILED<br><br>JAN 2 3 2026<br><br>U.S. DISTRICT COURT DISTRICT OF DELAWARE |

## REPORT AND RECOMMENDATION

Plaintiff Billy Burton, Jr. brings this civil action against the City of Wilmington (the "City") and several police officers arising from a police encounter that resulted in Plaintiff being shot in the pelvis during a mental health crisis. Plaintiff asserts claims under the Fourth Amendment through 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (RA), and Delaware law. Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 12). Mr. Burton has moved to strike portions of Defendants' reply brief in support of their motion to dismiss (D.I. 19). This case was referred to me on September 18, 2025. (D.I. 17). For the reasons set forth below, I recommend granting-in-part and denying-in-part Defendants' motion to dismiss and denying as moot Mr. Burton's motion to strike.

I.   **BACKGROUND**[1]

Mr. Burton suffers from schizoaffective disorder and has a documented history of mental health crises. (D.I. 10 ¶ 15). He had been treated by mental health professionals and was known to the Wilmington Police Department ("WPD") as an emotionally disturbed person ("EDP"). (*Id.* ¶¶ 18-19). In the months preceding the incident, WPD officers had responded to at least two prior encounters involving Mr. Burton and his father, including incidents involving threats and domestic disturbances. (*Id.*)

On April 12, 2023, Mr. Burton contacted 911 requesting medical assistance. (*Id.* ¶ 20) WPD and paramedics responded and transported Mr. Burton to a local hospital for treatment. (*Id.*). Mr. Burton was discharged several hours later. (*Id.* ¶ 21). Later that day, Mr. Burton's mother placed a second 911 call after discovering Mr. Burton in the family home with multiple self-inflicted stab wounds to his chest. (*Id.* ¶¶ 23-25).

WPD defendants Corporal Simeon Crocker and Patrolman Sean Cannon were the first officers to arrive at the home. (*Id.* ¶ 28). Defendant Corporal Brandon Payne arrived thereafter. (*Id.* ¶ 40). Upon entering the residence, Corporal Crocker drew his weapon and proceeded up the stairs leading to the second floor, with Patrolman Cannon following behind. (*Id.* ¶ 29). A dog came out of one of the upstairs rooms. (*Id.*). Corporal Crocker and Patrolman Cannon stepped aside and let Mr. Burton's father pass them on the steps to tend to the dog. (*Id.* ¶ 30).

They found Mr. Burton on the second floor holding a large knife. (*Id.* ¶ 31). He was bleeding from self-inflicted wounds to the chest and appeared emotionally distressed. (*Id.*). According to the Amended Complaint, Corporal Crocker and Patrolman Cannon calmly told Mr.

---

[1]   I "accept as true all well-pleaded facts and allegations" in Mr. Burton's Amended Complaint and "must draw all reasonable inferences therefrom in favor of the plaintiff." *Bell v. Cheswick Generating Station*, 734 F.3d 188, 193 n.5 (3d Cir. 2013).

2

Burton to "put the knife down." (*Id.* ¶¶ 32-33). Corporal Crocker then twice yelled "put the fucking knife down." (*Id.* ¶ 32).

Mr. Burton began walking down the hallway toward Corporal Crocker. (*Id.* ¶ 35). Mr. Burton alleges that he never raised the knife toward the officers or verbally threatened them. (*Id.*). As Mr. Burton continued moving the hallway toward where Corporal Crocker was located, Corporal Crocker discharged his service weapon, striking Mr. Burton in the pelvis. (*Id.* ¶¶ 35, 42). Mr. Burton survived the shooting and was subsequently treated for his injuries. (*Id.* ¶¶ 4, 42, 57).

Mr. Burton alleges that while all three officers were wearing body-worn cameras during the incident, no footage of the circumstances surrounding the shot exists. (*Id.* ¶ 43). Patrolman Cannon allegedly placed his hand over the body-worn camera on his torso, Corporal Payne never left the first floor of the residence and had his arm in front of the camera at the time the shot was fired, and Corporal Crocker did not activate his camera upon arriving to Mr. Burton's home. (*Id.*)

Following the incident, Mr. Burton was charged with Aggravated Menacing and Possession of a Deadly Weapon During the Commission of a Felony. (*Id.* ¶ 93). Those charges were later dismissed through a *nolle prosequi* by Delaware Department of Justice. (*Id.* ¶ 94).

On April 11, 2025, Mr. Burton initiated the instant action against the City, Corporal Crocker, and two unidentified "John Doe" officers. (D.I. 1). Defendants moved to dismiss. (D.I. 8). Mr. Burton filed an Amended Complaint substituting Patrolman Cannon and Corporal Payne as defendants and adding a malicious prosecution claim. (D.I. 10). The court denied Defendants' first motion to dismiss as moot. (D.I. 11).

The Amended Complaint asserts that the City violated Title II of the ADA and Section 504 of the RA by failing to reasonably accommodate Mr. Burton's mental illness during the police encounter (Count I); that the City is liable under *Monell v. Department of Social Services* for failing

to train officers and failing to implement appropriate policies for responding to individuals experiencing mental health crises (Count II); that Corporal Crocker used excessive force in violation of the Fourth Amendment (Count III); that Patrolman Cannon and Corporal Payne failed to intervene and stop Corporal Crocker's interaction with Mr. Burton (Count IV); that Corporal Crocker, Patrolman Cannon, and Corporal Payne maliciously prosecuted Mr. Burton in violation of the Fourth Amendment (Count V); and that Corporal Crocker violated Delaware law for claims of wanton negligence (Count VI) and assault and battery (Count VI). Defendants moved to dismiss Mr. Burton's Amended Complaint. (D.I. 12). Mr. Burton moved to strike portions of Defendants' reply brief in support of their motion to dismiss (D.I. 19).

## II.     LEGAL STANDARD

In reviewing a motion filed under Rule 12(b)(6), the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotations omitted). A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The complaint need not contain detailed factual allegations, but conclusory allegations and "formulaic recitation[s] of the elements of a cause of action" are insufficient to give the defendant fair notice of the nature of and grounds for the claim. *Twombly*, 550 U.S. at 555. The complaint must contain facts sufficient to show that a claim has "substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam). While this plausibility standard requires more of the complaint than allegations supporting the mere possibility that the defendant is liable as alleged, plausibility should not be

taken to mean probability. *Twombly*, 550 U.S. at 545. A claim is facially plausible, and the standard is satisfied, when the claim's factual allegations, accepted as true, allow the court to reasonably infer that the defendant is liable as alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 1948 (2009).

### III. DISCUSSION

Defendants seek to dismiss the Amended Complaint on the following grounds: (A) dismiss the ADA and RA claim against the City (Count I) because the presence of exigent circumstances render the ADA and RA inapplicable and Mr. Burton fails to plausibly allege discrimination "by reason of" disability; (B) dismiss the excessive force claim against Corporal Crocker (Count III) because Corporal Crocker is entitled to qualified immunity; (C) dismiss the *Monell* claim against the City (Count II) because the predicate excessive force claim fails; (D) dismiss the failure to intervene claim against Patrolman Cannon and Corporal Payne (Count IV) as time-barred; (E) dismiss the state law claim for malicious prosecution (Count V) for failure to plead that Defendants' conduct caused Mr. Burton to suffer property damage, bodily injury or death; and (F) decline to exercise supplemental jurisdiction on Mr. Burton's wanton negligence (Count VI) and assault and battery claims (Count V).

For the following reasons, I recommend granting Defendants' motion to dismiss Mr. Burton's claim for malicious prosecution (Count V) to the extent that claim is based on state law. I recommend denying Defendants' motion in all other respects.

### A. Whether Mr. Burton States a Claim Under the ADA and RA (Count I)

Defendants argue that Mr. Burton does not state a claim under the ADA and RA because the presence of exigent circumstances render the ADA and RA inapplicable, and Mr. Burton fails to plausibly allege discrimination "by reason of" disability. (D.I. 13 at 8-12).[2]

#### i. *Exigent Circumstances*

Relying on authority from the Court of Appeals for the Fifth Circuit, Defendants seek to bar Mr. Burton's ADA and RA claim on grounds that the officers acted in response to an exigent threat which precludes plaintiff from alleging a reasonable accommodation. (D.I. 13 at 8-11, citing *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000) and *Winder v. Gallardo*, 118 F.4th 638, 644-45 (5th Cir. 2024)). But the Court of Appeals for the Third Circuit has not adopted a categorical rule exempting police officers' on-the-scene responses from the requirements of the ADA or the RA. *See Haberle v. Troxell*, 885 F.3d 170, 180-81 (3d. Cir. 2018) (acknowledging disagreement among circuit courts "concerning the point during a law enforcement encounter at which the ADA applies to police conduct [but] no court of appeals has held that the ADA does not apply at all"); *id.* at 180 n.11 ("The analysis as to what is 'reasonable' under the circumstances, including exigent circumstances, and as to how their determination is reached, presents complicated issues. We have no occasion now to consider the analytical approach to an ADA claim arising from an arrest because [dismiss the ADA claim on other grounds] . . . Nevertheless, in the future, we may need

---

[2] In their reply brief in support of their motion to dismiss, Defendants for the first time contend that Mr. Burton has not plead that any of Defendants' alleged discrimination was intentional. (D.I. 18 at 4). This argument does not appear in Defendants' opening brief. Because Defendants "failed to raise [this] argument[] in their opening brief, I decline to consider [it]" at this stage in the litigation. *Doehler N. Am., Inc. v. Davis*, No. 22-501-RGA, 2023 WL 3569775, at *6 (D. Del. May 19, 2023) (citing *In re Niaspan Antitrust Litig.*, 2023 WL 3243532, at *12 (3d Cir. Apr. 24, 2023) ("Arguments raised for the first time before a district court in a reply brief are deemed forfeited."). Because I decline to consider Defendants' forfeited argument, Mr. Burton's motion to strike on this ground is moot.

to consider whether and under what circumstances it is reasonable to require police officers to make accommodations during an arrest when they face an exigent threat."). As Mr. Burton points out (D.I. 16 at 8-10), district courts within the Third Circuit have declined to adopt *Hainze's* wholesale exigent threat exception. *See, e.g., Washington v. Brown*, No. 23-01632, 2024 WL 2214686, at *11 (M.D. Pa. May 15, 2024) (collecting cases). Instead, those courts have concluded that whether and how the ADA applies in a particular police encounter is a fact-intensive inquiry that turns on the "reasonableness" of a proposed accommodation under the ADA. *Id.*

Defendants do not respond to this authority. Instead, they ask me to find the circumstances necessarily exigent. (D.I. 13 at 9-11). But my duty at the motion to dismiss stage is to determine whether Mr. Burton has stated a claim, not resolve factual disputes. *See White for Est. of Roberts v. Golding*, No. 21-1833-SRF, 2022 WL 16961285, at *6 (D. Del. Nov. 16, 2022) (declining to dismiss ADA/RA claim on motion to dismiss); *Zavec v. Collins*, No. 16-00347, 2017 WL 3189284, at *16 (M.D. Pa. July 27, 2017) (same). Accordingly, I decline to conclude that the disputed presence of exigent circumstances categorically forecloses Defendants' ADA or RA liability at the pleading stage, and recommend denying Defendants' motion on this ground.

### ii. Discrimination "by reason of" disability

Defendants contend that the Amended Complaint "includes no plausible factual allegations that he was discriminated against at all by the City of Wilmington, let alone based on his disability." (D.I. 13 at 12).

To state an ADA and RA claim, Mr. Burton must plead facts that he "(1) [was] a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Haberle*, 885 F.3d at 178 (quoting *Bowers v. Nat'l*

*Collegiate Athletic Ass'n*, 475 F.3d 524, 553 n.32 (3d Cir. 2007)); *McDonald v. Commonwealth of Pa., Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 94–95 (3d Cir. 1995) (noting same standards apply to claims pursuant to Section 504 of RA). "If the arrestee's 'disability played a role in the ... decisionmaking process and ... had a determinative effect on the outcome of that process[,]' i.e., if the arrestee's disability was a 'but for' cause of the deprivation or harm he suffered, then the fourth element of an ADA claim has been met." *Haberle*, 885 F.3d at 179 (internal quotations omitted). Causation may be alleged "if there are factual allegations that the defendant did not account for the plaintiff[']s disability." *Washington*, 2024 WL 2214686, at *12 (citing *Snider v. Motter*, No. 13-01226, 2016 WL 4154927, at *8 (M.D. Pa. June 2, 2016), *report and recommendation adopted*, No. 13-1226, 2016 WL 4140728 (M.D. Pa. Aug. 4, 2016)).

Mr. Burton relies on *Washington*. There, the court concluded that officers failed to accommodate an individual's mental health emergency, and thus discriminated against him on the basis of his disability, when the complaint alleged that the responding officers "were aware that [plaintiff] had a disability and nonetheless responded with significant force and did not employ de-escalation tactics as a result of [the police department's] failure to train the officers on responding to a mental health crisis." *Washington*, 2024 WL 2214686, at *11-13. Defendants neither address *Washington* nor point to contrary authority.

Similar to the plaintiff in *Washington*, Mr. Burton has plead causation here. Mr. Burton alleges that the City knew Mr. Burton suffered from a disability as an EDP, that WPD failed to train its officers in connection with police interactions with disabled persons, that Corporal Crocker approached Mr. Burton aggressively, that Corporal Crocker did not attempt to de-escalate the situation, that Corporal Crocker did not call for backup, that Corporal Crocker did not try to create more space and time between he and Mr. Burton, and that Corporal Crocker did not attempt use

nonlethal force against Mr. Burton despite having pepper spray and a taser. (D.I. 10 ¶¶ 3, 19, 28, 37–42, 74). Accordingly, I recommend denying Defendants' motion on this ground.

### B. Whether Corporal Crocker Is Entitled to Qualified Immunity on Mr. Burton's Excessive Force Claim (Count III)

Defendants argue that Corporal Crocker is entitled to qualified immunity under *James v. New Jersey State Police*, 957 F.3d 165 (3d Cir. 2020) and *Kisela v. Hughes*, 584 U.S. 100, (2018). (D.I. 13 at 13–15). Mr. Burton maintains factual disputes prevent resolving the issue of qualified immunity at the motion to dismiss stage. (D.I. 16 at 12-18).

"Qualified immunity protects government officials from being held liable for damages when their conduct does not violate a citizen's clearly established rights." *James*, 957 F.3d at 166. Qualified immunity has two prongs. "First, a court must decide 'whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right.'" *James*, 957 F.3d at 167 (quoting *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015)). "And second, the court must determine 'whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.'" *Id.* (quoting *id.*).

The Third Circuit in *Stringer v. County of Bucks* recently explained that, "[a]lthough the Supreme Court has repeatedly stressed the importance of resolving qualified immunity 'at the earliest possible stage in litigation' . . . Rule 12(b)(6) is often 'a mismatch for immunity and almost always a bad ground for dismissal.'" 141 F.4th 76, 85 (3d Cir. 2025) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) and *Fogle v. Sokol*, 957 F.3d 148, 162 n.14 (3d Cir. 2020)). With respect to the second prong of the qualified immunity analysis and whether the right allegedly violated was "clearly established" (which Defendants say warrants dismissal even at this early stage), the Third Circuit explained that such analysis "presents unique difficulties at the pleading stage" because "the right allegedly violated must be defined at the appropriate level of specificity

before a court can determine if it was clearly established," and defining the right with specificity is a "fact-intensive inquiry" that "must be undertaken in light of the specific context of the case." *Id.* at 85-86 (internal citations and quotation marks omitted). As a result, "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Id.* at 86 (noting that "without more than the complaint to go on, a court cannot fairly tell whether a right is obvious or squarely governed and thus clearly established by precedent, making qualified immunity inappropriate on a motion to dismiss") (internal citations and quotation marks omitted); *see also Sause v. Bauer*, 585 U.S. 957, 959–60 (2018) (per curiam) (reversing grant of qualified immunity on a 12(b)(6) motion because of disputed factual issues). As a result, in cases where "the fact-bound nature of the clearly established inquiry combined with the dearth of facts at the pleading stage makes it difficult for a defendant to claim qualified immunity on the pleadings before discovery and before the parties (much less the courts) uncover the precise contours of the official's conduct and the context in which it occurred," then "the district court must deny the motion to dismiss and seek to resolve qualified immunity at summary judgment." *Id.* at 86-87 (internal citation and quotation marks omitted).

Defendants' request for qualified immunity is premature. I cannot, without further factual development, determine whether it would have been clear to Corporal Crocker that his conduct was reasonable when interacting with Mr. Burton. *See Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) ("the crucial question" in a qualified immunity analysis is "whether the [Defendants] acted reasonably in the particular circumstances that [they] faced."; *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (noting that specificity is "especially important" in excessive-force cases); *Jacobs v. Cumberland County*, 8 F.4th 187, 196 (3d Cir. 2021) (noting "reasonab[leness] of force often hinges on the details of an individual case").

10

Indeed, the Third Circuit has repeatedly stated that resolution of a qualified immunity defense is "premature when there are unresolved disputes of historical fact relevant to the immunity analysis." *Reilly v. City of Atl. City*, 532 F.3d 216, 234 (3d Cir. 2008) (quoting *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005)); *Stringer*, 141 F.4th at 88–89. Defendants argue that Corporal Crocker is entitled to qualified immunity because the Amended Complaint establishes that Mr. Burton was armed with a knife, refused commands to drop it, and advanced toward officers. (D.I. 13 at 13–15). But Mr. Burton alleges a different version of events. Specifically, Mr. Burton alleges that he was experiencing a mental health crisis upstairs by himself, he did not raise the knife toward officers or make any threatening gestures toward them, he committed no crime, his actions were directed toward himself rather than others, Corporal Crocker escalated the encounter by advancing and yelling rather than retreating and staying calm, Corporal Crocker failed to create distance or time, failed to wait for backup or crisis-trained personnel, and failed to employ de-escalation techniques or less-lethal alternatives; and that, collectively, these failures directly contributed to the use of deadly force. (D.I. 10). *See, e.g.*, *Ardo v. Pagan*, 652 F. Supp. 3d 545, 560 (E.D. Pa. 2023) (denying qualified immunity defense in part because, "had the Troopers not approached Mr. Ardo, who they knew to be emotionally disturbed and potentially wielding an explosive device, and had instead maintained their distance, taken cover, and attempted to de-escalate the situation, they would not have been put in a position in which they felt it necessary to shoot Mr. Ardo. Put differently, a reasonable officer could have foreseen that approaching a suicidal person carrying an explosive device all while visibly wielding a gun and shouting commands at said person could likely result in a situation in which the suicidal person attempts to ignite the device, thus placing the officer's life at risk and necessitating the use of deadly force.") Defendants' view that the facts are "undisputed" is not persuasive. And even

11

Defendants' preferred cases—*Kisela* and *James*—determined the issue of qualified immunity at summary judgment on a fully developed factual record. *Kisela*, 584 U.S. at 102; *James*, 957 F.3d at 167. Accordingly, I recommend dismissing without prejudice Defendants' motion on this ground.

### C. Whether Mr. Burton States a Monell Claim (Count II)

Defendants contend that the failure of Mr. Burton's excessive force claim against Corporal Crocker mandates the dismissal of Mr. Burton's *Monell* claim. (D.I. 13 at 15-16). Because I do not recommend dismissing Mr. Burton's excessive force claim, I do not recommend dismissing Mr. Burton's *Monell* claim.[3]

### D. Whether Mr. Burton's Claims Against Patrolman Cannon and Corporal Payne (Count IV) Are Time-Barred

Defendants contend that Mr. Burton's failure to intervene claims against Patrolman Cannon and Corporal Payne are time-barred because Mr. Burton did not name them as defendants until filing the Amended Complaint, which occurred after the two-year statute of limitations expired. (D.I. 13 at 17–18). Mr. Burton responds that the claims relate back to the filing of the original complaint under Rule 15(c). (D.I. 16 at 19–20).

Delaware's two-year statute of limitations applies to Mr. Burton's claims arising under 42 U.S.C. § 1983. *Rivera v. New Castle Cnty. PD*, No. 20-1758-GBW, 2023 WL 2683554, at *2 (D.

---

[3] In their reply brief in support of their motion to dismiss, Defendants for the first time contend that Mr. Burton has not "plausibly allege[d] deliberate indifference for purposes of municipal liability." (D.I. 18 at 5-6). This argument does not appear in Defendants' opening brief. Because Defendants "failed to raise [this] argument[] in their opening brief, I decline to consider [it]" at this stage in the litigation. *Doehler N,* , 2023 WL 3569775, at *6 (citing *In re Niaspan Antitrust Litig.*, 2023 WL 3243532, at *12). Because I decline to consider Defendants' forfeited argument, Mr. Burton's motion to strike on this ground is moot.

Del. Mar. 28, 2023). "The naming of a John Doe defendant in a complaint does not stop the statute of limitations from running or toll the limitations period as to that defendant." *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003). Mr. Burton timely filed his original complaint on April 11, 2025 and named Corporal Crocker, John Doe 1, and John Doe 2 as defendants. (D.I. 1). Mr. Burton filed his Amended Complaint naming Patrolman Cannon and Corporal Payne as defendants on July 17, 2025—more two years after the underlying incident. (D.I. 10). Claims against Patrolman Cannon and Corporal Payne therefore are time-barred unless Mr. Burton can meet the requirements of Rule 15(c). *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 200-01 (3d Cir. 2001); *see also Garvin*, 354 F.3d at 220 ("Replacing the name John Doe with a party's real name amounts to the changing of a party or the naming of a party under Rule 15(c), and thus the amended complaint will relate back only if the three conditions specified in that rule are satisfied.").

Under Rule 15(c)(1)(C), "an amendment that changes the party or the naming of the party in an action relates back to the original pleading only if a plaintiff can show: (1) the claim set forth in the amended pleading arose out of the conduct, transaction, or occurrence in the original pleading; (2) within 90 days of the filing of the complaint, the parties to be brought in by amendment received notice of the institution of the suit and would not be prejudiced in maintaining a defense; and (3) the new parties knew or should have known that, but for a mistake concerning their identities, they would have been made parties to the action." *Rivera*, 2023 WL 2683554, at *2 (citing *Garvin*, 354 F.3d at 222). Mr. Burton must prove each of the three factors. *Id.* (citing *Singletary*, 266 F.3d at 194). Notice may be imputed using the "shared attorney" method. *Averill v. Jones*, No. 12-599, 2019 WL 3804686, at *3 (D. Del. Aug. 13, 2019) (quoting *Garvin*, 354 F.3d at 220). "[T]he 'shared attorney' method, . . . is based on the notion that when the originally named

party and the parties sought to be added are represented by the same attorney, 'the attorney is likely to have communicated to the latter party that he may very well be joined in the action.'" *Averill*, 2019 WL 3804686, at *4 (quoting *Garvin*, 354 F.3d at 222–23).

Defendants maintain that Patrolman Cannon and Corporal Payne "could not have rightfully known or anticipated they would be singled out and made parties to this action" because they were "not the only City police officers to respond to the 911 call or engage with Plaintiff on the date of the incident." (D.I. 13 at 17–18). Defendants further maintain that "Plaointiff [sic] makes no effort to explain how the defendants he seeks to add were aware of this action within the relevant time frame." (D.I. 18 at 8).[4] But Mr. Burton, however, explains that his original complaint "stated claims for failure to intervene against Does 1 and 2 and detailed who those individuals were (i.e., they arrived at or around the same time as Crocker, one went upstairs with Crocker and then came back downstairs)" and "[t]herefore, their identities could be sufficiently ascertained." (D.I. 16 at 19–20). He explains that counsel for the original Defendants entered their appearances on June 9, 2025, and after Mr. Burton filed an Amended Complaint, that same counsel moved to dismiss the Amended Complaint on behalf of both the original defendants as well as Patrolman Cannon and Corporal Payne. (D.I. 16 at 19-20, citing D.I. 5; D.I. 6; D.I. 12; D.I. 13). According to Mr. Burton, it is "common sense" that defense counsel communicated to Patrolman Cannon and Corporal Payne that "they would likely be joined in the case." (D.I. 16 at 20). Notably, Defendants do not assert that defense counsel did not communicate with Patrolman Cannon and Corporal Payne

---

[4] Defendants argue that, "In determining whether an amended complaint relates back for purposes of the newly added defendants, the relevant inquiry is whether notice can be imputed to the proposed defendant within the relevant 120 day period under Rule 4(m) for serving the summons and complaint." That is not correct. Rule 4(m) was amended on December 1, 2015 to reduce the service period from 120 days to 90 days. Fed. R. Civ. P. 15 at n.2015 Amendment. Thus, the relevant time frame under Rule 15(c) is 90 days. *See, e.g.*, *Moore v. Doe*, No. 21-05302, 2023 WL 1766262, at *3 (E.D. Pa. Feb. 3, 2023).

14

during the relevant timeframe. *cf. Est. of Kamal by & through Kamal v. Twp. of Irvington*, 790 F. App'x 395, 398 (3d Cir. 2019) (affirming district court's finding of no evidence to support "shared attorney method" of notice when "the only shared counsel in the case . . . submitted a sworn certification to the District Court stating that shared counsel did not communicate with the individual officers"); *Garvin*, 354 F.3d at 225 (affirming district court's finding of no evidence to support "shared attorney" method in part because the attorney filed a brief stating that she did not inform the proposed defendants of the lawsuit, that the proposed defendants had not been advised that they might be named as defendants, and that the attorney was unaware of any other manner through which the proposed defendant would learn of the lawsuit).

Given that there appear to be disputed facts bearing on whether Patrolman Cannon and Corporal Payne had notice during the relevant period, this issue is more properly the subject of a motion for summary judgment. *See Averill v. Jones*, No. 12-599, D.I. 198, at *2 (D. Del. Aug. 13, 2019) (noting that disputed factual issues not in the pleadings or public record rendered Rule 15(c) "relation back" issues better suited for summary judgment). Accordingly, I recommend dismissing without prejudice Defendants' motion on this ground.

### E. Whether Mr. Burton's State Law Claim for Malicious Prosecution Claim (Count V) Must Be Dismissed

Defendants argue that "[t] Delaware County and Municipal Tort Claims Act immunizes public employees from liability for state law tort claims unless Plaintiff can establish that the defendant's conduct caused Plaintiff to suffer 'property damage, bodily injury or death'" and that Mr. Burton has not plead facts suggesting that the officers' pursuit of criminal charges against him caused Mr. Burton to suffer property damage, bodily injury, or death. (D.I. 13 at 18–19, citing 10 *Del. C.* § 4011 (c)). Mr. Burton concedes that 10 *Del. C.* § 4011 (c) bars a common law claim of

malicious prosecution. (D.I. 16 at 6). Accordingly, I recommend dismissing Mr. Burton's state law malicious prosecution claim.[5]

### F. Whether the Court Should Exercise Supplemental Jurisdiction on Mr. Burton's Wanton Negligence (Count VI) and Assault and Battery Claims (Count V)

Defendants argue that, because Mr. Burton's federal claims ("Counts I-III") must be dismissed, the court should decline to exercise supplemental jurisdiction over Mr. Burton's state law claims against Corporal Crocker for wanton negligence (Count VI) and assault and battery (Count VI). But I have not recommended dismissing Counts I–III for the reasons described above. Thus, I recommend exercising supplemental jurisdiction over Mr. Burton's state law claims consistent with 28 U.S.C. § 1367.

## IV. CONCLUSION

For the reasons set forth above, I recommend granting-in-part and denying-in-part Defendants' motion to dismiss and denying as moot Mr. Burton's motion to strike.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court.

---

[5] In their reply brief in support of their motion to dismiss, Defendants for the first time contend that Mr. Burton has not asserted a "'plausible claim' for Constitutional malicious prosecution." (D.I. 18 at 8–9). Defendants did not move to dismiss Mr. Burton's Fourth Amendment malicious prosecution claim in their opening brief. Because Defendants "failed to raise [this] argument[] in their opening brief, I decline to consider [it]" at this stage in the litigation. *Doehler N,*, 2023 WL 3569775, at *6 (citing *In re Niaspan Antitrust Litig.*, 2023 WL 3243532, at *12). Because I decline to consider Defendants' forfeited argument, Mr. Burton's motion to strike on this ground is moot, and his claim for Constitutional malicious prosecution survives.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: January 23, 2026

                                                      Laura D. Hatcher
                                                      United States Magistrate Judge